**Mary E. TRAUTMANN, Appellant,**

v.

**Gail Rae HAMEL, Respondent.**

No. 49050.

Supreme Court of Missouri,

Division No. 1.

June 11, 1962.

Motion for Rehearing or for Transfer to Court En Banc Denied July 16, 1962.

804

Rufus Burrus, Independence, and Wesner & Wesner, Sedalia, for appellant.

Hale Houts, Alvin C. Randall, Houts, James, Randall, Hogsett & McCanse, Kansas City, for respondent.

HOLMAN, Commissioner.

In this action plaintiff sought to recover damages in the sum of $25,000 for the alleged wrongful death of her husband resulting from an automobile collision. A trial resulted in a verdict for defendant. Plaintiff has duly appealed and here contends that she is entitled to a new trial because of the alleged errors of the trial court (1) in sustaining defendant's objection to the admission in evidence of the deposition of Hazel Luetgen, and (2) in giving Instructions 3 and 4 at the request of defendant. While defendant contends on this appeal that there were no prejudicial trial errors, her first contention is that any such errors would be immaterial because plaintiff failed to make a submissible case on the evidence submitted, and would not have been aided by the deposition of Mrs. Luetgen.

The collision in question occurred in Sweet Springs, Missouri, at the intersection of east-west Highway 40 and north-south Highway 127. Plaintiff's decedent was driving a Chevrolet pickup truck northwardly on Highway 127 and at collision time was crossing Highway 40. Defendant was driving a Ford Convertible west on Highway 40. The left front of the Ford struck the right front of the pickup truck. The impact occurred in the north half of Highway 40. Plaintiff's case was submitted under the humanitarian doctrine and hypothesized defendant's negligence in the operation of her car (in addition to the usual requirements of such an

instruction) in failing "to have slackened its speed and changed its course in a manner so as to have avoided colliding with the pickup truck being operated by plaintiff's husband."

The casualty in question occurred on October 3, 1958, at about 4 p. m. The day was clear and the highways dry. At the intersection Highway 40 was 24 feet wide and Highway 127 was 21 feet wide on the north side and 25 feet wide on the south side of Highway 40. There were stop signs for traffic entering the intersection from Highway 127. An overhead "blinker" light flashed red for traffic on Highway 127 and amber for traffic on Highway 40. East of the intersection for traffic approaching on Highway 40 was a "Slow" sign at 300 feet and a "Junction Ahead" sign at about 1,000 feet. A driver approaching from the east could see the intersection for at least 300 feet. The highways at this point are more or less level, although the approach from the east on Highway 40 is very slightly downgrade.

In the opinion of the highway patrolman, the impact occurred near the north edge of Highway 40. However, two other witnesses gave testimony indicating that the front wheels of the truck were about two feet north of the north edge of the pavement. No witness heard defendant sound her horn or heard the squeal of her tires nor saw any tire marks on the pavement. The patrolman stated that the truck was 16 or 17 feet long. After the collision the truck was on the north half of Highway 40, but defendant's car continued in a northwesterly direction for 150 feet before coming to rest on a vacant lot. Plaintiff's husband was badly injured in the collision and died five months later without having regained consciousness.

William Driver testified that he operated the service station on the southwest corner of the intersection; that he did not see either car before the collision but was working about 70 feet away when he heard "an explosion"; that he looked up and saw Mr. Trautmann come out of the truck "like he had been shot out of a cannon." The witness immediately went to the scene of the collision and, in his testimony, described the location of the vehicles after the collision and other facts which have been heretofore stated in a general way.

Glen LaRue was also at the Driver Service Station. He testified that Mr. Trautmann stopped his truck at the service station and talked with him for a time before proceeding across the highway; that decedent's appearance was normal and that he appeared to be sober. This witness did not actually see the collision and the remainder of his testimony is substantially the same as that of Mr. Driver.

■ An eyewitness to the collision was Earl Fain who was sitting in his car which was parked facing north on the west side of the driveway going into Dooley's Cafe (north of Highway 40) about 100 feet east of the east edge of Highway 127. He testified that he saw Mr. Trautmann stop at the service station and then move his truck up to Highway 40 and stop; that he then put his truck in gear, "he didn't launch out there, he just let it barely start off"; that he then saw defendant's convertible approaching the intersection about 50 feet east of his car; he then looked toward the Trautmann truck and saw the two vehicles collide; that in crossing the intersection Mr. Trautmann was in the "center lane" and "was not driving fast." Upon cross-examination admissions were obtained from this witness which tended to weaken or impeach his testimony but since, in determining whether plaintiff made a submissible case we view the evidence in the light most favorable to her (and the matters of impeachment were not such as would wholly destroy the testimony), we will not extend this opinion by including those matters of impeachment.

Defendant did not testify but plaintiff read portions of her deposition as admissions. In such testimony defendant stated that she was driving from Columbia to

Kansas City; that as she entered Sweet Springs she was traveling about 45 m. p. h., but at the time of the impact she guessed she "was going 35 to 40 m. p. h."; that the brakes and steering mechanism on her car were in good condition; that from the time she became aware that the truck was crossing the highway it was a couple of seconds before the impact occurred; that she saw the truck when the front wheels went onto the highway; that the truck was moving "slow but even"; she didn't believe it was increasing speed; that when she saw the truck coming across she put her foot on the brake immediately and pulled to the right of the road so that her right front wheel was on the shoulder. The following questions and answers were also read by plaintiff: "Q. Well, you say you did slow down for the intersection? A. Yes, sir, I did. Q. You had your foot on the brakes, then, is that right? A. Yes, sir." In an effort to explain the last question and answer defendant's attorney read the following: "Q. Did you have it on there before he started on the highway? A. No, sir, I hadn't had it on there before I was aware of him at all. I had already slowed down before this time."

Plaintiff presented as an expert witness Sergeant Frank Wessling of the Kansas City Missouri Police Department who had been assigned to the accident investigation unit of that department for 15 years. He testified that he had made an examination of the intersection where the instant collision occurred; that a car going 40 m. p. h. would travel 118 feet in two seconds, and at 35 m. p. h. it would travel 104 feet in that length of time; that at 40 m. p. h. a car would travel 44 feet during reaction time and could be stopped in a total of 120 feet; that at 35 m. p. h. the total stopping distance would be 96 feet; that if the driver already had his foot on the brake the car, at 40 m. p. h., could be stopped in 105 feet, and at 35 m. p. h. in 84 feet.

The only witness offered by defendant was Harry Dyer, Jr., who was driving a car in the same direction as defendant's and about 175 feet to the rear thereof. He testified that he saw the pickup enter and come across Highway 40 in a northeasterly direction; that he saw the brake lights on defendant's car go on; that defendant had pulled almost completely onto the north shoulder when she hit the truck; that he applied the brakes on his car and pulled into the eastbound lane and went around the truck and then parked his car. On cross-examination this witness identified a statement which he had signed and given to defendant's insurance company shortly after the casualty. He admitted that in this statement he stated that he saw the pickup truck stop south of the intersection when his car was 900 feet away and defendant's car about 700 feet away; that there were no eastbound vehicles at the intersection at that time.

On re-direct examination defendant's counsel brought out that the witness, in the statement, said that he didn't believe the convertible was over 100 feet away when the pickup started northward. On recross-examination the witness stated that he did not have any judgment "at this time" as to the distance the convertible was to the east of the pickup truck at the time it started to cross the highway.

Plaintiff offered the deposition of Hazel Luetgen and presented proof that Mrs. Luetgen was residing in Sweet Springs, Missouri at that time. Defendant objected to the deposition on the ground that "the unavailability of the witness has not been established." The court sustained the objection. We think the court clearly erred in excluding that deposition. We take judicial notice of the fact that Sweet Springs is located in Saline County. The trial was held in Jackson County. Civil Rule 57.29, V.A.M.R., authorizes the reading of a deposition if the witness "resides in a county other than that in which the trial is held." The proof herein complied with the quoted requirement of said rule

and the reading of the deposition was accordingly authorized.

Defendant, however, says that any error in excluding the deposition was not prejudicial because the testimony contained therein was not favorable to plaintiff. We do not agree. Mrs. Luetgen was an eyewitness to the collision and also corroborated the testimony of Mr. Fain as to the location of the car in which he was seated. Mrs. Luetgen testified in her deposition that she was driving a car which she stopped at the north edge of Highway 40 about 100 feet "or a little more" east of Highway 127; that she was waiting for two westbound cars to pass so that she could then cross the highway and go to her home in Sweet Springs; that she looked up and saw the yellow car (defendant's) right in front of her car and at the same time saw the Trautmann truck in the center of Highway 40, and that they collided immediately thereafter. We think the testimony of this witness is important and aids the plaintiff because she is the only witness who testified definitely as to the location of both vehicles at a time when deceased was unquestionably in a position of imminent peril. In determining whether plaintiff made a submissible case we will consider the testimony of Mrs. Luetgen in the same manner as if it had been admitted.

■ We have concluded that plaintiff made a submissible case. It is our opinion that a jury could reasonably have found all of the facts stated in this paragraph. The evidence would warrant a finding that decedent was in a position of imminent peril at the time his moving truck crossed the center line of Highway 40. At that point it became apparent that he was oblivious to the danger of a collision with defendant's car. There was evidence from which it could be inferred that when defendant's car was 100 feet to the east the front of the truck was about eight feet north of the center line. The truck had started in gear from a stopped position and was slowly crossing the highway. It had traveled slightly more than 12 feet before decedent came into a position of imminent peril. In view of that evidence it is reasonable to assume that it was traveling about five m. p. h. or 7.35 feet per second. At least one second elapsed after decedent was in imminent peril before defendant arrived at a point 100 feet to the east. At 45 m. p. h. defendant's car was traveling 66 feet per second. Therefore, a jury could reasonably have found that defendant was 166 feet away from the point of impact when decedent came into imminent peril. There is no evidence of the stopping distance of a car going 45 m. p. h. but there was testimony that a car going 40 m. p. h. could have been stopped in 120 feet. If a car going 40 m. p. h. could have been stopped in 120 feet, we think a jury could reasonably infer that a car going 45 m. p. h. could have been stopped within 166 feet. However, avoidance of the collision by stopping defendant's car was not submitted and hence was abandoned. Nevertheless, that evidence would reasonably warrant a finding that defendant, in 166 feet, could certainly have slackened the speed of her car sufficiently to have given decedent's truck time (about 2 seconds) to clear the south lane of the highway so that she could have then turned her car to the left and thus have avoided the collision.

Other items of evidence appearing in the statement of facts support our view that plaintiff made a submissible case, but we consider it unnecessary to specifically discuss and analyze additional theories supporting submissibility.

Since the judgment must be reversed and the cause remanded for a new trial because of error in excluding the deposition of Hazel Luetgen, we deem it unnecessary to discuss the contention that the court erred in giving certain instructions. Prior to another trial counsel for defendant will have an opportunity to re-examine those instructions and if it is considered advisable to offer them at another trial they may make such corrections therein (particularly as to Instruction 4) as may

be considered necessary in view of the attack made thereon by plaintiff.

Reversed and remanded.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.