In re the MARRIAGE OF William Marshall WELSH and Sharon Renee Welsh.

William Marshall WELSH, Respondent,

v.

Sharon Renee WELSH, Appellant.

No. 14064.

Missouri Court of Appeals, Southern District, Division Two.

May 28, 1986.

Motion for Rehearing or Transfer Denied June 18, 1986.

Application to Transfer Denied Sept. 16, 1986.

Robin E. Fulton, Schnapp, Graham & Reid, Fredericktown, for appellant.

Ernie J. Richardson, Poplar Bluff, for respondent.

CROW, Judge.

A mother appeals from the denial of her petition for review of a default judgment which transferred custody of her daughter from her to her ex-husband, the child's father. A history of the litigation is essential in understanding the issues.

By an amended decree of dissolution of marriage entered February 5, 1982, the Circuit Court of Butler County ("the trial court") dissolved the marriage of William Marshall Welsh ("William") and Sharon Renee Welsh ("Sharon"). The decree, among other things, awarded Sharon custody of the parties' only child, Christi Pauline Welsh ("Christi"), born September 15, 1980. William was awarded visitation with Christi two "weekends" each month, and temporary custody of Christi the first two weeks of June, July, and August each year. William was ordered to pay Sharon $225 per month child support.

On July 20, 1982, in response to an order by the trial court directing Sharon to show cause why she should not be held in contempt, Sharon appeared with counsel in the trial court. William and his attorney likewise appeared. Sharon's attorney announced that an agreement had been reached regarding visitation "on a schedule that's different from the amended decree." Characterized by William's counsel as an "interim schedule of visitation," the stipulation was that William would have visitation with Christi from 5:00 p.m., July 23, until 5:00 p.m., July 30; from 5:00 p.m., August

8, until 5:00 p.m., August 22 [1]; and from 5:00 p.m., September 5, until 5:00 p.m., September 19. The trial court informed the parties that the cause would be taken up again on September 21, 1982.

On August 20, 1982, William filed a motion for modification, alleging that Sharon had disobeyed the amended decree of dissolution by refusing to allow William any visitation with Christi except one two-day period. The motion added that Sharon had refused to comply with the visitation agreement of July 20, 1982, that she had removed herself and Christi from Missouri "for long periods of time" on several occasions, and that she was presently living outside Missouri "for the purpose of denying [William] his rights of visitation." The motion sought an order modifying the amended dissolution decree by granting William custody of Christi and eliminating William's duty to pay Sharon child support.

The motion for modification was never served on Sharon.

On September 8, 1982, William filed a first amended motion for modification, containing the same allegations as the motion of August 20, with an additional paragraph averring that the trial court had jurisdiction to make the child custody determination sought therein "under its inherent continuing jurisdiction and under the Uniform Child Custody Jurisdiction Act, RSMo 452.-440, et seq."

There was, at that time, a note in the circuit clerk's file showing the following address for Sharon: "Sharon Welsh, c/o Sandra Just, # 22 Clipper Place, Abita Springs, La. 70420." Alongside the address was the notation, "2–15–82."

Upon the filing of William's first amended motion for modification, the office of the circuit clerk, on September 9, 1982, issued a summons for personal service outside Missouri, showing that Sharon could be served at "# 22 Place, Abita Springs, Louisiana." The summons was sent to the sheriff of St.

Tammany Parish, Covington, Louisiana, for service.

On September 16, 1982, the sheriff returned the summons unserved, reporting "no such street on map." According to the sheriff, there was no information regarding Sharon at the post office, the water department, or the telephone company.

On September 21, 1982, pursuant to the directive that the trial court had issued at the conclusion of the proceedings on July 20, William and his attorney appeared in the trial court. Sharon did not appear, nor did anyone on her behalf. The trial court, after hearing evidence, found that Sharon had willfully and flagrantly disobeyed the amended decree of dissolution of marriage by refusing to allow William to visit Christi except for one two-day period. The trial court further found that Sharon had willfully and flagrantly refused to comply with the "temporary agreement" on visitation placed on record July 20, and that Sharon had removed herself and Christi from Missouri for long periods of time on more than one occasion since December, 1981. Additionally, the trial court found that Sharon was presently living outside Missouri with Christi for the purpose of denying William his visitation rights. On the basis of these findings, the trial court adjudged Sharon in contempt and sentenced her to six months in the county jail. Furthermore, the trial court awarded custody of Christi to William pending a hearing on William's first amended motion for modification. These orders, of course, remained unexecuted by reason of the absence of Sharon and Christi.

Thereafter, nothing significant occurred until January 19, 1983. On that date, William's attorney executed and filed an affidavit for service by publication regarding William's first amended motion for modification. The affidavit stated that Sharon was a nonresident of Missouri, that she could not be personally served in Missouri, and that her present address was unknown.

---

**1.** The trial court's "docket sheet" shows that this period of visitation was to end August 21, not August 22.

Pursuant to the affidavit, an order of publication of notice, issued by the office of the circuit clerk, was published weekly for four consecutive weeks in a Poplar Bluff newspaper, beginning January 26, 1983.

On March 11, 1983, according to the docket sheet, the trial court received by mail a copy of a "Petition to Recognize Foreign Judgment and File Certified Custody Decree" from an attorney in New Orleans, Louisiana. The original of the petition had evidently been filed by Sharon in the District Court of St. Tammany Parish, Louisiana, the objective being to obtain registration, in the Louisiana court, of the amended decree of dissolution of marriage of February 5, 1982. The petition informed the Louisiana court that on February 15, 1982, Sharon and Christi had established domicile at 22 Clipper Place, Abita Springs, Louisiana, and that, by reason thereof, Louisiana was the "home state, and only state with jurisdiction to modify the previous custody decree, under the Uniform Custody Jurisdiction Act." The petition averred that although Sharon had received no "legal notice" of proceedings concerning custody of Christi, Sharon had reason to believe such action "may be or has been instituted but the Missouri Courts no longer have jurisdiction over [Sharon] and her child." At the foot of the petition was a certificate by the Louisiana attorney showing that copies of the petition had been sent by certified mail March 3, 1983, to William and to his attorney of record in Missouri.

On March 22, 1983, William's attorney executed and filed in the Missouri trial court an application and affidavit for service by mail in regard to William's first amended motion for modification. The affidavit stated that Sharon was a nonresident of Missouri, and that her last known address was: "# 22 Clipper Place, Abita Springs, Louisiana 70420." The following day (March 23, 1983), a summons upon service by mail was issued by the office of the circuit clerk, addressed to Sharon at the aforesaid address. The summons was delivered to Sharon March 28, 1983, as evidenced by her signature on the registered mail receipt.

On April 25, 1983, the trial court received a letter from Sharon's Louisiana attorney, acknowledging that Sharon had received the Missouri summons by mail. The letter protested that Missouri no longer had jurisdiction under the Uniform Child Custody Jurisdiction Act to determine custody of Christi. The letter added that Sharon was endeavoring to register, in the Louisiana court, the Missouri amended decree of dissolution of marriage giving Sharon custody of Christi, and that William and his Missouri attorney had been informed of this by the Louisiana attorney.

After receiving the summons by mail on March 28, 1983, Sharon filed no motion or pleading in the trial court in response to William's first amended motion for modification. Ultimately on August 8, 1983, William and his attorney appeared in the trial court for a hearing on said motion. Sharon did not appear, nor did anyone on her behalf.

William testified he did not know where Sharon was, but he acknowledged he had been told by his attorney that the latter had learned Sharon's address from a Louisiana attorney a few months earlier. William testified that he was unmarried, that he was employed by a railroad and earned about $29,000 per year "gross," that he had a "nice" one-bedroom house next door to his parents' residence in Poplar Bluff, that he had not drunk any alcoholic beverage for "about two years," and that he took no "unprescribed medicine." William explained that if he were awarded custody of Christi, his mother was available to "babysit" and to help him care for Christi.

William's attorney informed the trial court that William had not seen Christi "since somewhere in the late winter of 1982 for a two-day period."

The trial court found the issues in favor of William and against Sharon, and determined that Sharon's actions were "opposed to the general welfare and well-being of the mental and physical development of the child." The trial court further found it had

jurisdiction over the parties and the subject matter of the case, and that Sharon had been served by certified mail March 28, 1983, and was in default. The trial court instructed William's attorney to prepare a decree transferring custody of Christi from Sharon to William, and releasing William from any further child support obligation.

On August 22, 1983, the trial court entered a "Modified Decree of Dissolution of Marriage," finding, among other things, that Sharon, since the entry of the amended decree of dissolution of marriage on February 5, 1982, had failed and refused to allow William to exercise his visitation rights with Christi, that Sharon had removed herself and Christi from Missouri to prevent William from visiting Christi and to avoid compliance with the trial court's decree and orders, that Sharon had disobeyed the "interim visitation schedule" agreed upon by the parties on July 20, 1982, and that Sharon's acts had been detrimental to Christi's welfare. The trial court further found that William was a fit and proper person to have custody of Christi, and that Christi's best interests and welfare would be served by placing her in William's custody. Additionally, the trial court found that Christi had resided in Missouri throughout her parents' marriage and during most of the six months immediately preceding the filing of the motion for modification. The trial court ordered the amended decree of dissolution of marriage modified by transferring custody of Christi from Sharon to William, and by cancelling William's duty to pay child support to Sharon. We henceforth refer to this decree of August 22, 1983, as "the modification decree."

On May 10, 1984, more than eight months after entry of the modification decree, Sharon filed in the trial court a "Petition for Review of Final Judgment Entered by Default." This pleading, henceforth referred to as the "petition for review," was in three counts. Count I alleged that Sharon had not been summoned in the modification proceeding "by ordinary process of law," but only by publication which "did not provide adequate notice" to her. Count

I further alleged that Sharon had not refused to allow William to visit Christi, that Sharon had not willfully disobeyed any court order regarding visitation, that Sharon had not removed herself or Christi from Missouri for the purpose of denying William his visitation rights, that Sharon's acts had not been detrimental to Christi's welfare, that transferring custody of Christi from Sharon to William would not promote Christi's welfare, that Sharon had not proven herself unfit to have custody of Christi, that Christi had not resided in Missouri during the six months immediately preceding the filing of William's motion for modification, and that there was not available in Missouri substantial evidence concerning Christi's present and future care, protection, training, and personal relationships.

Count II of Sharon's petition for review averred that the trial court did not have jurisdiction to make any custody determination regarding Christi on August 8, 1983 (the date the trial court had heard William's first amended motion for modification), in that Missouri was not Christi's home state at the time of the commencement of the modification proceeding, nor had Missouri been Christi's home state within six months before commencement of that proceeding. In that regard, Count II alleged that Sharon and Christi had established residence in Louisiana on January 15, 1982, more than six months before William filed his first amended motion for modification on September 8, 1982.

Count III of Sharon's petition for review pleaded that the trial court was without jurisdiction to grant William any relief on his first amended motion for modification in that there was a technical defect in that pleading. We need not consider Count III any further, as it is not the basis of any assignment of error in this appeal.

Invoking Rule 74.15, Missouri Rules of Civil Procedure (15th ed. 1984), Sharon's petition for review prayed that the modification decree be vacated and set aside. Rule 74.15 provides:

"No such judgment shall be set aside unless the petition for review shall state the existence of the facts set forth in Rule 74.12 and that the petition of the plaintiff, upon which the judgment complained of was obtained, is untrue in some material matter, setting it forth, or that he has and then had a good defense thereto, setting such defense forth, or both, and then only on condition that the defendant answer or direct a motion to the petition of the plaintiff on which the judgment was rendered within a reasonable time, to be ordered by the court. Such petition for review shall be verified by affidavit of the defendant or his attorney of record."

Rule 74.12 (referred to in Rule 74.15, above) provides:

"When such interlocutory judgment shall be made and final judgment entered thereon against any defendant *who shall neither have been summoned personally nor have appeared to the suit,* or who has been made a party as the representative of one who shall have been summoned or appeared, such final judgment may be set aside, if the defendant shall, within the time hereinafter limited, appear, and, by petition for review, show good cause for setting aside such judgment." (Emphasis added.)

Obviously, Rules 74.12 and 74.15 are interdependent.

We observe that under Rule 74.12, a petition for review, as pertinent to the instant case, may be filed by "any defendant who shall neither have been summoned personally nor have appeared to the suit." On the other hand, when one is personally served with process, the remedy of petition for review is unavailable. *Estate of Kennedy v. Menard,* 690 S.W.2d 465, 468[2] (Mo.App.1985); *Young v. Smith by Burke,* 648 S.W.2d 916, 918–19[4] (Mo.App.1983). Sharon's petition for review, as noted earlier, averred that she was served by publication. It neglected, however, to mention

that she had been served by registered mail on March 28, 1983.

In these circumstances, one might wonder whether Sharon, with respect to the modification proceeding, is a person who was not "summoned personally" within the meaning of Rule 74.12, thereby being eligible to file a petition for review under that rule and Rule 74.15. Obviously, if the only service on Sharon had been by publication, one could hardly contend that Sharon had been "summoned personally." However, Sharon cannot escape the fact that she was also served by registered mail. In that regard, we note that § 452.460, RSMo Cum.Supp.1982, which was in effect at the time Sharon was served by registered mail, and which is a part of Missouri's Uniform Child Custody Jurisdiction Act (§§ 452.-440–.550, RSMo 1978, as amended) provides, in pertinent part:

"1. The notice required for the exercise of jurisdiction over a person outside this state shall be given in a manner reasonably calculated to give actual notice, and may be given in any of the following ways:

. . .

(3) By certified or registered mail; . . . ."

It seems anomalous to provide by statute that jurisdiction—assuming a Missouri court *has* jurisdiction under the Uniform Child Custody Jurisdiction Act ("UCCJA") to make a child custody determination—may be exercised over a person outside Missouri upon service by certified or registered mail, and at the same time permit a person served in that manner to ignore the litigation, then come into court months after entry of judgment, and petition for review under Rules 74.12 and 74.15. However, William does not contend that Sharon was ineligible under those rules to petition for review of the modification decree, hence we shall proceed as if Sharon were entitled to do so, without holding that she was.[2]

**2.** At least one commentator would apparently hold that Sharon was ineligible to petition for review under Rules 74.12 and 74.15. *See:* Devine, Missouri Civil Pleading and Practice, §§ 14–1 and 28–5 (1986).

With that caveat, we return to the proceedings below, observing that the next event of consequence occurred on October 11, 1984, when the trial court conducted an evidentiary hearing on Sharon's petition for review. Sharon appeared in person and with counsel, as did William. Evidence was heard, the material elements of which will be discussed in connection with Sharon's assignments of error. At the conclusion of the hearing, the trial court granted the parties leave to file post-trial briefs. Sharon filed hers November 1, 1984.

On December 7, 1984, the trial court entered judgment in favor of William and against Sharon on all three counts of Sharon's petition for review. The effect of this, of course, was to leave the modification decree of August 22, 1983, in full force and effect. Sharon brings this appeal from the judgment of December 7, 1984.

■ In considering Sharon's assignments of error, we address her second point first. That point is:

"The trial court erred in overruling [Sharon's] petition for review of final judgment entered by default because the trial court erroneously declared and applied the law in that [Sharon] was not personally served with the first amended motion for modification and was only served by constructive service by mail; and the trial court did not, therefore, have jurisdiction to enter its modified decree of dissolution of marriage because the minor child's status was not a res before the court because of her absence from the jurisdiction; and that any interpretation to the effect that personal service is not required would violate [Sharon's] constitutional due process rights."

Sharon's contentions require study of Missouri's UCCJA.

The subject of *jurisdiction* under the UCCJA is covered in § 452.450, RSMo 1978. That section describes sundry situations, any one of which will vest a Missouri court with jurisdiction to make a child custody determination.[3] We remind Sharon that paragraph 3 of that section states: "Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."

The UCCJA recognizes, of course, that if a Missouri court has jurisdiction under § 452.450 to make a child custody determination, the court must give notice of such proceeding to, among others, "any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child." § 452.455.-2, RSMo Cum.Supp.1982.

When a Missouri court has jurisdiction under § 452.450 to make a child custody determination, and one of the persons entitled to notice is outside Missouri (as Sharon was), § 452.460, RSMo Cum.Supp.1982, comes into play. That section, quoted in part *supra*, provides that the notice required for the *exercise* of jurisdiction over a person outside Missouri (assuming the Missouri court *has* jurisdiction to make the child custody determination under § 452.-450), shall be given in a manner reasonably calculated to give actual notice, and may be given by, among other methods, certified or registered mail.

In short, one looks to § 452.450 to see whether a Missouri court *has* jurisdiction to make a child custody determination in regard to a particular child, and one then looks to § 452.460 to see what type notice the Missouri court must give a person outside Missouri—assuming such person is entitled to notice—in order for the Missouri court to *exercise* its jurisdiction.

3. Section 452.445(1), RSMo Cum.Supp.1982, provides:
"'Custody determination' means a court decision and court orders and instructions providing for the custody of a child, including visitation rights. This term does not include a decision relating to child support or any other monetary obligation of any person; but the court shall have the right in any custody determination where jurisdiction is had pursuant to section 452.460 and where it is in the best interest of the child to adjudicate the issue of child support;".

Presuming, for the moment, that the Missouri trial court had jurisdiction under § 452.450 to make the child custody determination in the modification decree of August 22, 1983—a subject we discuss later when we address Sharon's first assignment of error—nothing in § 452.460, as we read it, required that Sharon be handed a Missouri summons in Louisiana by an official authorized to serve process there in order for the Missouri trial court to *exercise* its jurisdiction. Section 452.460.1(3) plainly authorized service on Sharon by registered mail.

 Consequently, were we to rule in favor of Sharon on the constitutional argument in her second assignment of error, we would have to declare § 452.460.1(3) unconstitutional as applied to her in this litigation. Sharon realizes as much, asserting that "[a]n interpretation of Section 452.460 that would grant Missouri jurisdiction over this case would be violative of Appellant's constitutional due process rights."

We are thus squarely confronted by a constitutional attack on a Missouri statute. We must, accordingly, examine the record to see whether the attack has been preserved for appellate review. If it has, jurisdiction of this appeal lies in the Supreme Court of Missouri per Mo. Const. art. V, § 3 (1945, amended 1982) which provides, in pertinent part:

"The supreme court shall have exclusive appellate jurisdiction in all cases involving the validity ... of a statute ... of this state...."

However, if the constitutional attack has not been preserved, transfer to the Supreme Court is not required. *State v. Perkins*, 680 S.W.2d 331, 334–35 (Mo.App. 1984); *State v. Tygart*, 673 S.W.2d 83, 87 (Mo.App.1984).

To preserve a constitutional question for appellate review, a litigant must, among other things, raise the question at the earliest opportunity consistent with good pleading and orderly procedure, and must specify the section or sections of the constitution claimed to have been violated. *State v. Brookshire*, 325 S.W.2d 497, 500 (Mo.

1959); *Ingle v. City of Fulton*, 260 S.W.2d 666, 667[1] (Mo.1953); *State ex rel. Barnett v. Sappington*, 260 S.W.2d 669, 671[6] (Mo.1953).

Applying those requirements, we hold that Sharon's challenge to the constitutionality of § 452.460.1(3) has not been preserved for appellate review. The statute was not mentioned in Sharon's petition for review. Indeed, as noted earlier, that pleading totally ignored the fact that Sharon had been served by registered mail. Furthermore, we find nothing in the transcript of the hearing of October 11, 1984, that would preserve the point, nor do we find anything that would do so in Sharon's post-trial brief of November 1, 1984.

We therefore hold that Sharon cannot, in this appeal, contend that because she was served by registered mail instead of by an officer authorized to serve process in Louisiana, the exercise of jurisdiction by the Missouri trial court—again, assuming such court *had* jurisdiction under § 452.450 to enter the modification decree—violated her "constitutional due process rights."

A related contention in Sharon's second point is that irrespective of § 452.460.1(3), "personal service" on her was necessary in order to give the Missouri trial court "in personam jurisdiction" to enter "a general judgment transferring custody." According to Sharon, service by mail "does not grant the court in personam jurisdiction" because the "status or res of the custody of the child is simply not before the court until the mother is personally before the court." Sharon, in support of this theory, relies on a number of cases decided before Missouri enacted its version of the UCCJA in 1978. Laws 1978, pp. 688–95. We need not discuss those cases, however, as the issue of jurisdiction to make a child custody determination is now governed by § 452.-450, and the issue of what notice is required for the exercise of such jurisdiction over a person outside Missouri is governed by § 452.460. Again assuming, for the purpose of Sharon's second point, that the Missouri trial court had jurisdiction under § 452.450 to make the child custody deter-

mination in the modification decree of August 22, 1983, we hold that Sharon's contention that "personal service" on her by a Louisiana official authorized to serve process there was required in order for the Missouri trial court to exercise its jurisdiction is, by reason of § 452.460, without merit, and that any cases decided before Missouri enacted the UCCJA that hold otherwise are inapplicable. Sharon's second point is, accordingly, denied.

■ We now address Sharon's first assignment of error, which states:

"The trial court erred in not granting [Sharon's] petition for review of final judgment entered by default and setting aside and vacating the modified decree of dissolution of marriage dated August 22, 1983, for the reasons that the trial court lacked jurisdiction under the Uniform Child Custody Jurisdiction Act to enter the modified decree inasmuch as Missouri was not the home state of the minor child within six (6) months prior to the filing of the motion, it was not in the best interests of the minor child for the court to assume jurisdiction and it did not appear that no other state would have jurisdiction over the minor child."

Regarding this assignment of error, we note that § 452.450 provides, in pertinent part:

"1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state:

(a) Is the home state of the child at the time of commencement of the proceeding; or

(b) Had been the child's home state within six months before commencement of the proceeding and the child is absent from this state for any reason, and a parent or person acting as parent continues to live in this state;
. . . ."

Additionally, we note that § 452.445(4), RSMo Cum.Supp.1982, provides, in pertinent part:

" 'Home state' means the state in which, immediately preceding the filing of custody proceeding, the child lived with ... a parent ... for a [sic] least six consecutive months.... Periods of temporary absence of any of the named persons are counted as part of the six-month or other period;".

The trial court, in the modification decree of August 22, 1983, found, among other things, that Christi had resided in Missouri throughout the parties' marriage and during most of the six-month period immediately preceding the filing of William's first amended motion for modification. It is thus evident that the trial court, in finding that it had jurisdiction to enter the modification decree, based jurisdiction on either subsection "(a)" or subsection "(b)" of § 452.450.1(1), quoted above.

Sharon argues that the trial court could not have had jurisdiction under either subsection because, according to her, William's first amended motion for modification alleged that Sharon and Christi had been outside Missouri since December 4, 1981. This, says Sharon, constituted an "admission against interest" by William that Missouri had ceased to be Christi's home state more than six months before William filed his first amended motion for modification on September 8, 1982.

We do not read William's motion that way. The motion alleged that Sharon had refused to allow William to visit Christi since December 4, 1981, except for one two-day period, and that Sharon had removed herself and Christi from Missouri for long periods of time on more than one occasion since December 4, 1981. The motion further alleged that Sharon was, at the time of the filing of the motion, living outside Missouri with Christi for the purpose of denying William his visitation rights.

Bearing in mind that prior to December 4, 1981, Missouri was unquestionably Christi's home state, we find nothing in the aforesaid allegations that would require a finding that Missouri ceased to be Christi's

home state more than six months prior to September 8, 1982. As previously observed, if a child lives with a parent in a state for six consecutive months, periods of temporary absence are counted as part of the six-month period in determining the child's "home state." § 452.445(4). William's allegations could reasonably be understood as alleging that Sharon, during the period from December 4, 1981, until September 8, 1982, absented herself from Missouri, taking Christi with her, for temporary periods in order to deny William his visitation rights. We reject Sharon's argument that William's allegations constituted an admission against interest that Missouri ceased to be Christi's home state more than six months prior to September 8, 1982.

■ Sharon also argues that the trial court did not have jurisdiction to enter the modification decree under either subsection "(a)" or subsection "(b)" of § 452.450.1(1), in that William, at the August 8, 1983, hearing, informed the trial court that Sharon and Christi were in Louisiana. This, however, would not have defeated jurisdiction under either of those subsections, as jurisdiction to make a child custody determination under those subsections is determined at the time of the *commencement* of the proceeding, not the time that the evidence is heard.

■ Another argument tendered by Sharon is that if jurisdiction is to be based on subsection "(b)" of § 452.450.1(1), one requirement is that one parent continue to live in Missouri. Sharon asserts that William, on October 11, 1984 (the hearing on Sharon's petition for review), testified he had left Missouri and lived in Kansas subsequent to the modification decree of August 22, 1983. In that regard, William's testimony was that he lived in Kansas temporarily from November, 1983, until March, 1984, in connection with his railroad employment. He added, however, that he maintained his Missouri residence throughout that time. Moreover, the few months William spent in Kansas came after entry of the modification decree, and thus could not have affected the jurisdiction of the trial court to enter that decree.

■ Finally, argues Sharon, she testified at the hearing on her petition for review that Christi and she began living with her sister at 22 Clipper Place, Abita Springs, Louisiana, on January 15, 1982. Consequently, says Sharon, Missouri could not have been Christi's home state within six months preceding the filing of William's first amended motion to modify on September 8, 1982.

Sharon must realize, however, that the trial court was not obliged to believe her testimony. The trial court, as trier of the facts in this court-tried case, had the prerogative to determine the credibility of the witnesses, accepting or rejecting all, part, or none of the testimony of any witness. *Morgan v. Morgan,* 701 S.W.2d 177, 179[2] (Mo.App.1985); *Lee v. Rolla Speedway, Inc.,* 668 S.W.2d 200, 206[8] (Mo.App.1984). With respect to Sharon's credibility, we have noted earlier that her "Petition to Recognize Foreign Judgment and File Certified Custody Decree" in the District Court of St. Tammany Parish, Louisiana, alleged that Sharon and Christi established domicile at the Abita Springs, Louisiana, address on February 15, 1982, not January 15, 1982.

We have likewise observed that the note in the circuit clerk's file showing the Abita Springs address was accompanied by the notation "2–15–82." A deputy circuit clerk testified that this was the date Sharon had come to the office and furnished the address. The deputy clerk recalled Sharon explaining that it was her sister's address and that the clerk's office could send child support payments there until Sharon notified them otherwise. However, no payments were ever sent there, as the clerk's office later received instructions from Sharon to send the payments to the address of her mother, Margie Bates, 1416 North Main, Poplar Bluff, Missouri. We take judicial notice that Poplar Bluff is located in Butler County. *Trautmann v. Hamel,* 358 S.W.2d 803, 806[3] (Mo.1962).

Additionally, Sharon testified she obtained a Louisiana driver's license "right after" she moved to Louisiana. The license, however, carried an "issue date" of

February 23, 1983. Sharon also admitted contacting a "legal services" office in February, 1983, and she conceded she "could have" advised that office that she was living at an address in Litchfield Park, Arizona. She disclosed she had spent two weeks there.

Lastly, Sharon, appearing with counsel in the trial court on July 20, 1982, some five months after entry of the amended decree of dissolution of marriage, stipulated to the "interim schedule of visitation" set forth near the start of this opinion. It is manifest that the schedule would be difficult to comply with if Sharon and Christi, at that time, had been residing in Abita Springs, Louisiana. Yet, when the agreement was announced in open court, Sharon, through counsel, stated she did not mind providing the transportation. In view of the distance from Poplar Bluff, Missouri, to Abita Springs, Louisiana (Abita Springs lies a few miles north of Lake Pontchartrain, and about 30 miles from New Orleans), the trial court, in denying Sharon's petition for review, could have reasonably inferred that Sharon was either not residing in Abita Springs on July 20, 1982, or that she had no intention of complying with the agreed-upon schedule. Nowhere in the transcript of the proceedings of July 20, 1982, is there any hint that Sharon and Christi were, at that time, living in Louisiana. Indeed, William's attorney stated that if William was unable, due to employment, to pick up Christi on one of the scheduled dates, one of William's parents would do so. Sharon issued no warning that it would be necessary to go to Abita Springs, Louisiana, for such purpose.

The attorney who represented Sharon at the hearing on July 20, 1982, recalled Sharon saying she had been living in Louisiana; however, the attorney testified he corresponded with Sharon by addressing letters to 1416 North Main, Poplar Bluff, Missouri.

There was independent evidence that Sharon, during the period from December 4, 1981, to September 8, 1982, had, on sundry occasions, been physically present in Louisiana. This included (a) a "mailgram" from Sharon to William dated January 15, 1982, originating in Abita Springs, Louisiana, stating, "Due to weather conditions can't get back," (b) sales slips for auto parts Sharon testified she purchased in Mandeville, Louisiana, on May 18 and 19, 1982—the name of the purchaser does not appear on the slips, (c) four envelopes containing correspondence from various individuals addressed to Sharon at 1416 North Main, Poplar Bluff, Missouri, which had been forwarded by postal officials to Sharon at Abita Springs, Louisiana, and (d) a certificate dated August 27, 1982, stating that Sharon had completed a financial marketing consultation course which, according to Sharon, had been conducted in New Orleans. The site where the course had been given is not shown on the certificate.

Sharon conceded that since going to Louisiana she had been back in Missouri on several occasions "to come to court and things like that ... [a]nd business."

While it would be difficult to dispute that by the time of the hearing on Sharon's petition for review (October 11, 1984), Louisiana had become Christi's home state, that is not the controlling issue. Instead, the question is whether the trial court, on the evidence before it, could have reasonably found that Missouri had been Christi's home state within six months before William filed his first amended motion for modification on September 8, 1982. § 452.-450.1(1)(b). To make an affirmative finding on that issue, it was necessary to find only that Missouri was Christi's home state as late as March 9, 1982 (a date within six months before William filed his first amended motion for modification on September 8, 1982). We hold that the evidence was sufficient to support such a finding, particularly in view of (a) what occurred in the trial court on July 20, 1982, and (b) the fact that some time after February 15, 1982, the circuit clerk's office was told by Sharon to send her child support payments to the Poplar Bluff address instead of the Louisiana address.

Assuming, arguendo, that Louisiana ultimately became Christi's home state, we cannot say that the trial court, on the record here, was compelled to find that Louisiana became so prior to March 9, 1982. The fact that Louisiana may be

Christi's home state now—a matter we need not decide—would not divest the Missouri trial court of jurisdiction so long as Missouri had been Christi's home state as late as March 9, 1982. § 452.450.1(1)(b).

In *Hempe v. Cape*, 702 S.W.2d 152, 161–62 (Mo.App.1985), we mentioned that the purpose of § 452.450.1(1)(b), as explained in the Commissioners' Note under § 3, Uniform Child Custody Jurisdiction Act, 9 U.L.A. 123 (1979), is to protect a parent who has been left by the other parent taking the child along. The stay-at-home parent, if he acts promptly, may start proceedings in his own state (assuming it was the child's home state within six months before commencement of the proceedings), without the necessity of following the departed parent to another state, or perhaps to several states in succession. Here, when it became evident to William that Sharon had no intention of complying with the visitation provisions in the amended decree of dissolution of marriage or the "interim" visitation schedule agreed to in the trial court on July 20, 1982, William moved swiftly to seek a change of custody from Sharon to him. The evidence, as we have noted, was sufficient to support a finding that Missouri had been Christi's home state within six months before William filed his first amended motion for modification on September 8, 1982. That being so, the jurisdictional requirements of § 452.450.1(1)(b) were satisfied, and we need not decide whether the Missouri trial court would have had jurisdiction under any other provision of § 452.450. Sharon's first point is denied.

■ Sharon's third, and final, assignment of error maintains that the modification decree transferring custody of Christi from Sharon to William was against the weight of the evidence, and was unsupported by substantial evidence. Sharon insists that the trial court erred in considering certain items in the hearing on William's first amended motion for modification, and that the competent evidence at that hearing failed to prove a change in Christi's circumstances, and failed to prove that a transfer of custody was in Christi's best interests.

We have determined that we need not assay this point for merit, if any. Rule 74.12, quoted *supra*, allows a default judgment to be set aside if, among other things, the party seeking such relief shows "good cause" therefor. The rule is essentially the same as § 511.170, RSMo 1978.

In *Oxley v. Oxley*, 239 Mo.App. 894, 203 S.W.2d 134 (1947), the denial of a petition for review of a default judgment was upheld on appeal. The petition for review had been filed under § 1247, RSMo 1939, the precursor of § 511.170, RSMo 1978. The opinion noted that the petition for review set out only what the defendant regarded as a good defense on the merits, but nowhere stated any good cause why the default judgment should be set aside. 203 S.W.2d at 137. The opinion cited with approval the following passage from *Perry v. Carthage Stone Co.*, 173 Mo.App. 414, 158 S.W. 887, 888 (1913): "[A] defendant against whom judgment goes by default should not be made an object of solicitude on the part of the court on the mere showing that he has a meritorious defense. He further must show that he had not been neglectful of his own interest and that his failure to appear was due to a cause which would have misled any reasonably prudent and diligent person in his situation."

In *Oxley*—unlike the instant case—the trial court denied the petition for review without a hearing. The appellate opinion, while acknowledging that the petition for review had pleaded what the defendant considered good defenses to the claim against him, found that the petition for review had not alleged any justifiable reason why the defendant failed to appear and contest the claim. 203 S.W.2d at 138. Holding that the defendant was required to show, in his petition for review, "good cause for setting aside such judgment," the opinion affirmed the denial of relief. *Id.*

A careful examination of Sharon's petition for review reveals no explanation as to why Sharon permitted judgment to be taken by default on William's first amended motion for modification. Perhaps (though it does not appear in the record) Sharon was loath to appear in the trial court and

defend against William's action because of the unexecuted sentence for contempt assessed by the trial court against her on September 21, 1982. That reason, however, would hardly constitute good cause for allowing the modification proceeding to go by default.

We have reviewed Sharon's testimony at the hearing on her petition for review, and have found nothing therein establishing good cause for relief from the default judgment.

In sum, we hold that the evidence was sufficient to support a finding by the trial court that it had jurisdiction to enter the modification decree of August 22, 1983, and we further hold that Sharon has failed to plead or prove good cause for setting said decree aside. Accordingly, the judgment of December 7, 1984, denying Sharon's petition for review is affirmed.

PREWITT, C.J., HOGAN, P.J., and MAUS, J., concur.